**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Antoinette Nessi, on behalf of herself and all others similarly situated, | Case No: 24 cv 6093 |
| Plaintiff, | |
| v. | |
| Honeywell Retirement Earnings Plan; Honeywell International Inc.; John Doe and Jane Doe 1-10, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Antoinette Nessi, by and through undersigned counsel, hereby brings this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for declaratory, injunctive and equitable relief to remedy to declare her rights under the terms of the Honeywell Retirement Earnings Plan ("Plan")'s violations of ERISA. On behalf of herself and all others similarly situated, Plaintiff alleges, *inter alia*, that Defendants breached their fiduciary duties and violated ERISA's joint and survivor annuity, non-forfeiture and disclosure provisions by misrepresenting and failing to disclose material information governing the calculation of benefits and optional forms of benefits utilized by the Plan in the "factors" applied to convert single life annuities into joint and survivor annuities, including, *inter alia*, failing to disclose the legally mandated relative values of the benefit forms and options offered at retirement, utilizing unreasonable actuarial assumptions in the calculation of joint and survivor benefits resulting in the disclosure and payment of joint and survivor benefits and optional forms of benefits that, contrary to ERISA, are significantly less than the actuarial equivalent of the single annuity form of benefits pension plan participants are entitled to under ERISA. In addition, Plaintiff alleges that Defendants failed to timely provide Plan documents that Defendants were required to provide

in response to Plaintiff's written requests.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2.     Venue is proper pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the pension plan is administered in the Northern District of Illinois, Plaintiff worked for UOP, a predecessor to Defendant Honeywell International, Inc. in this District, and Defendants do business and may be found in this District.

## PARTIES

3.     From in or around October 1976 through in or around December 1988, Plaintiff Antoinette Nessi ("Plaintiff" or "Ms. Nessi") was employed by UOP, a company that was subsequently purchased by Allied-Signal and changed its name to Honeywell International Inc. following Allied-Signal's merger with Honeywell.

4.     Ms. Nessi is a participant under the Honeywell Retirement Earnings Plan ("Plan") within the meaning of section 3(7) of ERISA, 29 U.S.C. § 1002(7).

5.     Defendant Plan is a defined benefit employee pension benefit plan within the meaning of section 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff. The Plan is named as a defendant herein in order to ensure that complete relief may be granted.

6.     Defendant Honeywell International, Inc. ("Honeywell") is the Administrator of the Plan and a fiduciary with respect to the Plan within the meaning of ERISA Sections 3(16)(A) and 3(21)(A), 29 U.S.C. §§ 1002(16)(A), (21)(A).

7.     Upon information and belief John Doe and Jane Doe 1-10, their lawful names being currently unknown, are the additional individual and/or corporate fiduciaries that may have exercised discretion with respect to the administration of the Plan including, but not limited to, determining claims for benefits and appeals from the denial of claims for benefits under the Plan and overseeing compliance with ERISA requirements pertaining thereto as well as overseeing compliance with the ERISA obligations to furnish requested documents and information.

**GENERAL ALLEGATIONS**

8.     From on or about October 13, 1976 through on about December 9, 1988, Ms. Nessi worked for UOP in this District in the Automotive Products and Fluid Systems Divisions in various positions including as Quality Control Coordinator, Assistant Quality Control Manager, Special Projects Manager and Food Marketing Manager.

9.     After Ms. Nessi began employment with UOP, it was acquired by the Signal Companies, which subsequently merged with Allied Corporation and became known as AlliedSignal.

10.     Following Ms. Nessi's voluntary termination of employment, AlliedSignal subsequently became known as Honeywell following AlliedSignal's acquisition of Honeywell.

11.     As with Honeywell, the Plan also changed names several times and following the acquisition of Honeywell, the Plan was renamed the Honeywell Retirement Earnings Plan with a supplement that applied to the former employees of UOP.

12.     As a result of her employment, Ms. Nessi became vested and earned nonforfeitable rights to accrued pension benefits under the Plan.

13.     The Plan provides that participants who are vested, and who have reached their Normal Retirement Date are eligible for their Accrued Benefit payable at Normal Retirement Date

or earlier if they meet the requirements for an Early Retirement Benefit under the Plan.

14.    The Plan's Normal Retirement Date is the first day of the calendar month coincident with or next following the participant's 65th birthday.

15.    The Plan provides that the trust fund governing the Plan shall be administered and enforced in accordance with the Internal Revenue Code and ERISA; however as set forth herein, the Plan does not in fact meet ERISA's requirements.

16.    Ms. Nessi elected to commence benefits under the Plan effective on or about March 1, 2023 when she was 70 years old.

17.    At the time she retired and elected to commence benefits under the Plan, Ms. Nessi was and is married to Robert Maguda ("Mr. Maguda").

18.    Under ERISA, the Plan's Single Life Annuity, which provides payment for the life of the participant only, is generally referred to as a "single annuity."

19.    ERISA Section 205, 29 U.S.C. § 1055, provides, in relevant part, that benefits for married participants in defined benefit pension plans must be paid in the form of a "qualified joint and survivor annuity" unless the participant's spouse elects to waive the qualified joint and survivor annuity form of benefit and such waiver acknowledges the effect of such election.

20.    Regulations issued under ERISA Section 205, 29 U.S.C. § 1055, require that a plan must disclose to participants and their spouses the relative values of the various forms of benefits that compare and describe the relative values of optional forms of benefits to the single life annuity including, *inter alia*, a general description of the eligibility conditions and other material features of the optional forms of benefit and sufficient additional information to explain the relative values of the optional forms of benefit available under the plan, such as, for example, the extent to which optional forms are subsidized relative to the normal form of benefit and the interest rates used to

calculate the optional forms.

21.     ERISA Section 205, 29 U.S.C. § 1055, which defines the qualified joint and survivor annuity as an annuity for the life of the participant with a survivor annuity requires that plans provide a survivor annuity for the life of the spouse which is not less than 50% of the amount of the annuity which is payable during the joint lives of the participant and spouse.

22.     ERISA Section 205, 29 U.S.C. § 1055, requires that plans that provide qualified joint and survivor annuities that are less than 75% of the participant's annuities must also provide a qualified optional survivor annuity, which must be at least 75% of the annuity payable during the joint lives of the participant and the spouse.

23.     Under ERISA Section 205, 29 U.S.C. § 1055, both the qualified joint and survivor annuity and the qualified optional survivor annuity must be the actuarial equivalent of the single annuity for the life of the participant.

24.     A form of benefit is actuarially equivalent to another form of benefit if the actuarial present value of the two amounts or benefits is the same (calculated using the same actuarial assumptions).

25.     Actuarial equivalence is determined based on a conversion factor that takes into account a participant's age, a participant's year of birth, interest rates that are used to determine the present value of each future payment, and a mortality table, which is a series of rates that predict how many people at a given age will die before attaining the next higher age.

26.     A reasonable actuarial assumption is one that reflects current mortality and improvements in mortality, and a reasonable interest rate is one that is based on prevailing market conditions.

27.     For a married participant, the Plan's normal form of payment is a 50% Joint and

Survivor annuity benefit ("50% J&S").

28.     The Plan also provides two optional forms of joint and survivor benefits: a 75% Joint & Survivor Benefit ("75% J&S") and a 100% Joint and Survivor Benefit ("100% J&S").

29.     Under the 50% J&S benefit option, 75% J&S benefit option and the 100% J&S benefit option, the participant's monthly benefit is the amount of the Single Life Annuity during the participant's lifetime reduced to account for a survivor benefit that the participant's surviving spouse will receive after the participant's death for the rest of the surviving spouse's life.

30.     The 50% J&S benefit option consists of a reduced benefit for the participant's life with 50% of the participant's benefits payable to the participant's surviving spouse after the participant's death.

31.     The 75% J&S benefit option consists of the reduced benefit for the participant's life with 75% of the amount of the participant's benefit payable to the participant's surviving spouse after the participant's death.

32.     Pursuant to ERISA Section 205, 29 U.S.C. § 1055, both the 50% J&S and 75% J&S benefit options are forms of joint and survivor annuities that must be "the actuarial equivalent of a single annuity for the life of a participant."

33.     If a participant is married at the time of retirement, the Plan provides that the participant's spouse must agree in writing with the participant's pension election.

34.     Although Plaintiff has requested relevant documents and information from the Plan, including a request for information and documents regarding how her joint and survivor benefit was calculated along with a copy of the calculations, Plaintiff has never been provided with the factors used to calculate the 50% J&S and 75% J&S benefit options.

35.     Upon information and belief, the factors Defendants used to calculate Ms. Nessi's

and Plan participants' joint and survivor benefit options utilize an outdated and unreasonable mortality table from 40 years ago (the 1984 Unisex Pension Table).

36.     The Plan's utilization of the outdated mortality table to convert the Single Life Annuity to joint and survivor forms of benefits results in benefit options and benefit payments that are significantly less than the actuarial equivalent of the Single Life Annuity and have deprived Ms. Nessi and Plan participants of pension benefits to which they are entitled.

37.     Although ERISA requires that the Plan's joint and survivor annuity forms of benefits must be actuarially equivalent to the single annuity form of benefit, the Plan's use of an outdated mortality table results in joint and survivor annuity benefits that are less than the actuarial equivalent of the Single Life Annuity when using reasonable mortality and interest assumptions.

38.     Ms. Nessi determined to commence benefits under the Plan effective March 1, 2023.

39.     When she advised Honeywell that she wished to retire, Ms. Nessi was presented with benefit amounts under the Plan's various pension benefit optional forms.

40.     Defendants advised Ms. Nessi that they had calculated her Single Life Annuity benefit as $ 1,301.77 per month.

41.     Defendants provided Ms. Nessi with a "relative value disclosure" statement, which is a disclosure of the relative value of the benefit forms she was entitled to elect at retirement which must meet applicable requirements under ERISA § 205, 29 U.S.C. § 1055 and regulations thereunder.

42.     In violation of the relative value disclosure requirements, the relative value disclosure statement falsely stated that the 50% J&S and the 75% J&S were both "[a]pproximately the same value" as Ms. Nessi's Single Life Annuity.

43.     Upon information and belief, in violation of ERISA § 205, 29 U.S.C. § 1055, and regulations thereunder, Defendants routinely and systematically provide incorrect and misleading disclosures of the required relative value of the benefit forms participants are entitled to elect at retirement.

44.     Based on the amounts presented to her, Ms. Nessi elected a 50% J&S benefit, effective March 1, 2023 which Defendants stated would be a monthly benefit in the amount of $1,158.58 per month.

45.     After completing her pension election form online, Ms. Nessi received a confirmation of her election, which stated that instead of the $1,158.58 per month, Ms. Nessi would begin receiving $1,150.37 per month beginning on March 1, 2023 and that Mr. Maguda would receive a benefit upon her death of $575.19 per month.

46.     Ms. Nessi did not receive any payment in March 2023.

47.     On or about April 7, 2023, Defendants advised Ms. Nessi that she would receive a combined total payment for $1,707.46 for two months of benefits (March and April 2023), an amount significantly less than the pension benefits Ms. Nessi had been advised she would receive.

48.     On April 4, 2023, without explanation, Defendants paid Mrs. Nessi an even lower amount of $1,552.13, which was purportedly a benefit for two months.

49.     Thereafter, beginning on or about May 1, 2023, instead of paying Ms. Nessi the amount she elected of $1,158.58 per month, and without notice to Ms. Nessi, the Plan began paying her $853.73 per month.

50.     Between on or about April 7, 2023 and on or about September 27, 2023, Ms. Nessi contacted Defendants in writing at least five times to ask them to correct her monthly benefit amount.

51.     Despite Ms. Nessi's multiple written inquiries and requests that Defendants commence payment of the amounts they had promised to Ms. Nessi, Defendants repeatedly advised Ms. Nessi that they were reviewing her request and continued to pay Ms. Nessi $853.73 per month for the months of May 2023 through September, 2023.

52.     On or about September 27, 2023, Defendants responded to Ms. Nessi's written inquiries and stated that Defendants would update Ms. Nessi's monthly benefit payment amount to $1,041.23 per month instead of the $1,158.58 per month that Defendants had previously advised and that Ms. Nessi had elected.

53.     Defendants also advised Ms. Nessi on September 27, 2023 that they would pay her a "retropayment" of $1,499.28 on or about October 2, 2023 without explanation of what that payment represented.

54.     On or about September 29, 2023, Ms. Nessi advised Defendants in writing that the retroactive payment amount was incorrect.

55.     In response to Ms. Nessi's written request to correct the benefit payment amount, Defendants again stated that they were reviewing the calculation.

56.     On or about October 2, 2023, again without any explanation the Plan retroactively paid Ms. Nessi the amount of $1,487.28 which was less than the amount it told her it would pay her of $1,499.29.

57.     Defendants' retroactive payment to Ms. Nessi did not include any interest for the delay in payment to Ms. Nessi.

58.     When Ms. Nessi asked for an explanation of the change and reduction to her benefits, Defendants stated that the "Joint/Survivor factor was incorrectly applied," which Defendants claimed was the reason for the lower amount without any additional explanation.

59.     Despite multiple further requests by Ms. Nessi for information and to correct her monthly benefit calculation, Defendants failed to provide Ms. Nessi with any documents or further information concerning how they calculated the reduced 50% J&S benefit.

60.     Thereafter beginning on or about November 1, 2023 and continuing to date, the Plan has been paying Ms. Nessi $1,041.14 per month.

61.     The Plan's payment of $1,041.23 per month to Ms. Nessi results in a 50% J&S benefit that is less than the actuarial equivalent of the Single Life Annuity.

62.     Defendants' failure to provide actuarially equivalent joint and survivor benefits constitutes a forfeiture of non-forfeitable benefits.

63.     Defendants' failure to provide any interest to Ms. Nessi on the six months of underpayment of her benefits and failure to pay the correct amount of benefits since she began receiving benefits constitutes a forfeiture of non-forfeitable benefits.

64.     Defendants have been unjustly enriched by Defendants' failure to offer and provide actuarially equivalent joint and survivor benefits.

65.     Defendants have also been unjustly enriched by failing to disclose the relative value of those forms of benefits thereby preventing participants from electing and receiving the more valuable form of benefit.

66.     Defendants have been unjustly enriched by failing and delaying payments to Ms. Nessi without providing Ms. Nessi any interest to account for the delay in payment of benefits.

67.     By letter dated October 13, 2023, Mrs. Nessi made a written request to the Plan Administrator for the following documents:

    a.   A copy of her pension file;

    b.   A detailed statement of her work history and accrued benefits;

c.   A detailed calculation of her retirement benefits

d.   A complete copy of the current Plan document;

e.   Complete copies of the Plan documents in effect during her UOP employment;

f.   Complete copies of the amendments to the Plan from the start of her employment;

g.   Complete copies of the summary plan descriptions in effect from the start of her employment with UOP to the present; and

h.   A complete copy of the trust agreement for the Plan together with all amendments thereto.

68.   By letter dated November 21, 2023, Defendants provided what they purported to be the Summary Plan Description for the Plan, a document that is dated January 1, 1974; however, that document was incomplete, missing many pages and partially illegible.

69.   By letter dated January 8, 2024, Plaintiff through counsel made another written request to the Plan Administrator for the Plan documents that Ms. Nessi had requested on October 13, 2023.

70.   In the January 8, 2024 letter, Plaintiff's counsel also asked the Plan Administrator to provide detailed calculations of copies of the mortality assumptions used for both Ms. Nessi's relative value calculations along with the interest rates used to calculate Ms. Nessi's joint and survivor benefits and copies of the calculations for any delayed retirement credit, if any, provided to Ms. Nessi.

71.   By letter dated January 12, 2024, Defendants provided Ms. Nessi with a copy of a letter she wrote dated June 20, 1997 regarding her pension benefits, a response to that letter and

an undated calculation of Ms. Nessi's deferred vested benefits which did not contain any joint and survivor benefit information or calculations of delayed retirement credits.

72. By letter dated February 21, 2024, which was received by Ms. Nessi on March 2, 2024, Defendants provided Ms. Nessi with a copy of the UOP (Allied-Signal) Retirement Income Plan (Effective August 22, 1988), some statements of her accrued benefits and prior calculations that did not explain or contain the joint and survivor factors or delayed retirement credits, and some prior correspondence regarding her benefits.

73. On or about April 5 and April 12, 2024, Ms. Nessi made a follow up request to Defendants for the detailed calculations of her pension benefits including detailed calculations regarding the reduction in her pension amount.

74. On or about April 8, 2024 and April 12, 2024, Defendants stated to Ms. Nessi that they did not have any "prior documentation ready to send participants this [sic] information" and asserted that "the amount the former administrator had calculated was determined using an incorrect Joint and Survivor factor" without advising Ms. Nessi what joint and survivor factors had been calculated or utilized.

75. Defendants' April 8, 2024 and April 12, 2024 correspondence also stated that a case was opened "and has been actively worked on" and Defendants further told Ms. Nessi: "Rest assured that once we receive an update you will be notified as soon as possible."

76. Ms. Nessi has received no further correspondence from Defendants following the April 12, 2024 correspondence.

77. As of the date of the filing of this compliant, and despite Ms. Nessi's multiple written requests and correspondence to the Plan Administrator center including her October 13, 2023, January 8, 2024 and April 9, 2024 correspondence with Defendants, Defendants still have

not provided complete copies of the Plan documents, the current summary plan description, the Plan's trust agreement nor any detailed description or statements of how Ms. Nessi's benefits were calculated.

78.     Upon information and belief, the Plan Administrator has access to copies of the documents Ms. Nessi has requested and the failure to provide such records did not result from matters beyond the control of the Plan Administrator.

79.     Ms. Nessi has exhausted any and all required administrative remedies.

## CLASS ALLEGATIONS

80.     In addition to Plaintiff's individual claims for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a Class action consisting of the following Class:

> All retired Plan participants who were married at the time of their retirement together
>
> with their surviving spouses, beneficiaries or representatives of their estates.

81.     Upon information and belief, the Class is so numerous that joinder is impracticable including because of the number of Class members and because the members of the Class are geographically dispersed. According to the Plan's latest public Form 5500 Annual Return/Report of Employee Benefit Plan filing, at the end of the Plan year in 2022, there were 11,145 active participants, 61,360 retired participants and 30,106 terminated vested participants entitled to future benefits. According to the Plan's actuarial assumptions, 85% of the Plan's male participants and 65% of the Plan's female participants have spouses that are eligible for a surviving spouse benefit.

82.     There are questions of law and fact common to the members of the Class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations

of the Plan and ERISA including, *inter alia*:

    a.   Whether Defendants violated ERISA and regulations thereunder by failing to calculate and provide options and pay Class members J&S forms of benefits that were actuarially equivalent to the single annuity;

    b.   Whether Defendants violated ERISA and regulations thereunder by failing to disclose to Class members and/or providing incorrect information to Class members regarding the relative values of optional joint and survivor annuity benefits; and

    c.   Whether Defendants breached their fiduciary duties to Class members.

83.    The claims of Ms. Nessi are typical of the Class members and Ms. Nessi will fairly and adequately represent the interests of the Class members. She has diligently pursued her claims and engaged the undersigned experienced ERISA and class action counsel.

84.    The prosecution of separate proceedings by the individual members of the Class would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

85.    Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the Class as a whole by engaging in the same violations of ERISA with respect to the Class, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the Class as a whole.

86.    A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

    a.   the Class members have suffered from the same violations of ERISA and the

numbers and likely geographic diversity of Class members make joinder impractical; and

b. the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for individual participants likely constitute a significant and recurring obstacle to the ability of individual Class members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension and ERISA rights unless remedied through injunctive and other appropriate relief.

87.    Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members and a class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
### (TO REDRESS VIOLATIONS OF ERISA'S JOINT AND SURVIVOR ANNUITY AND PRERETIREMENT SURVIVOR ACTUARIAL EQUIVALENCE AND NONFORFEITURE REQUIREMENTS )

88.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though set fully set forth herein.

89.    ERISA Section 203, 29 U.S.C. § 1053, and regulations thereunder provide minimum vesting standards and set forth the conditions under which a participant's right to benefits under a plan becomes nonforfeitable.

90.    ERISA Section 203(a), 29 U.S.C. § 1053(a), provides in relevant part that:

Each pension plan shall provide that an employee's right to his normal retirement

benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
(1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
(2)(A)(i) In the case of a defined benefit plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).
(ii) A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions....

91.     By the acts and omissions complained of above, including by improperly calculating the 50% and 75% J&S optional forms of benefits using unreasonable and inappropriate actuarial equivalence factors, by failing to disclose the assumptions used to calculate the 50% and 75% J&S optional forms of benefits, and by failing to provide accurate and truthful relative value disclosures with respect to the 50% and 75% J&S optional forms of benefits, Defendants violated ERISA Sections 205 and 203, 29 U.S.C. §§ 1055 and 1053, and regulations thereunder.

92.     As a proximate result of Defendants' violations of ERISA Sections 205 and 203, Ms. Nessi and Class members have been harmed and, *inter alia*, have been deprived of rights under ERISA including the right to elect actuarially equivalent joint and survivor annuities and the Plan and Defendants have been unjustly enriched.

93.     Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

94.     ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

95.     ERISA Section 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties

imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

96.     As a result of Defendants violations, Plaintiff and Class 1 members are entitled to declaratory, injunctive and other equitable relief pursuant to ERISA Sections 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3), including, but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA Sections 203 and 205 and applicable regulations; enjoining Defendants from failing to provide actuarially equivalent 50% and 75% J&S benefits and to recalculate and provide Ms. Nessi and Class members with actuarially equivalent benefits and the right to reelect optional forms of benefits, and to pay such redetermined and reelected benefits retroactively to the date of retirement with interest and to immediately make Plaintiff and all Class members whole; surcharging the fiduciaries; reforming the Plan to provide for actuarially equivalent joint and survivor benefits and preretirement survivor annuities; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's requirements; enjoining Defendants to pay vested benefits in accordance with the terms of the Plan as reformed; removing the fiduciaries, and providing such other and further relief as the Court deems just and proper, together with pre- and post-judgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS VIOLATIONS OF ERISA'S ACTUARIAL EQUIVALENCE AND VESTING REQUIREMENTS)

97.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though set fully set forth herein.

98.     ERISA Section 3(24), 29 U.S.C. § 1002(24), defines "accrued benefit" as "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age ..."

99.     ERISA Section 204(c)(3), 29 U.S.C. § 1054(c)(3), provides in pertinent part: "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit ... shall be the actuarial equivalent of such benefit ..."

100.    By the acts and omissions complained of above, including by failing to pay benefits upon attainment of normal retirement age and failing to pay missed or incorrectly calculated benefits with interest and/or an actuarial increase, Defendants violated ERISA Section 203 and regulations thereunder.

101.    As a proximate result of Defendants' violations of ERISA Sections 203 and 204, 29 U.S.C. §§ 1053 and 1054 Ms. Nessi has been harmed and, *inter alia*, has been deprived of rights under ERISA and vested nonforfeitable benefits and the Plan has been unjustly enriched.

102.    Plaintiff is entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA Sections 203, 204(c)(3) and applicable regulations; enjoining Defendants from failing to pay retroactive benefits with interest; and to immediately make Plaintiff whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to provide that retroactive benefits and/or incorrect benefit payments be paid with interest; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's vesting, accrual of benefits and nonforfeiture requirements; enjoining Defendants to pay vested benefits in accordance with the

terms of the Plan as reformed; removing the fiduciaries, and providing such other and further relief as the Court deems just and proper, together with pre- and post-judgment interest, attorneys' fees and costs.

**COUNT III**
**(TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)**

103.     Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

104.     ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

> (1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> ***
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

105.     Defendant fiduciaries have a fiduciary responsibility to administer the Plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

106.     By the acts and omissions complained of above, including, *inter alia*, by failing to provide actuarially equivalent joint and survivor optional forms of benefits, by failing to disclose the assumptions used to calculate the joint and survivor optional forms of benefits, by failing to provide accurate and truthful relative value disclosures of the joint and survivor optional forms of benefits, by withholding, reducing and failing to pay interest on benefits that have been withheld

and not paid and, by depriving Plaintiff and Class members of rights protected by ERISA and the terms of the Plan, and by failing to provide Plaintiff with documents and instruments required to be provided to Plan participants, Defendant fiduciaries breached their fiduciary duties to Plaintiff and Class members.

107.    As a proximate result of Defendant fiduciary's breaches of fiduciary duty, Plaintiff and Class members have been harmed and, *inter alia*, have been deprived of rights protected by the terms of the Plan and ERISA and the Plan has been unjustly enriched.

108.    Plaintiff and Class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA Section 404 and applicable regulations; enjoining Defendants from failing to pay actuarially equivalent joint and survivor and preretirement survivor annuities; enjoining Defendants from withholding and failing to pay benefits with interest upon repayment of benefits; surcharging the fiduciaries; reforming the Plan, *inter alia*, to provide for actuarially equivalent joint and survivor annuities; and enjoining Defendants to immediately make Plaintiff and all Class members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; removing the fiduciaries, and such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT IV
## (TO REDRESS VIOLATIONS OF ERISA'S REQUIREMENTS TO DISCLOSE PLAN DOCUMENTS UPON WRITTEN REQUEST)

109.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

110.    Section 104(b)(4) of ERISA, 29 U.S.C. 1024(b)(4), provides in pertinent part:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

111.    Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent

part:

Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

112.    Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by section 502(c)(1)(c)...ERISA [has been] increased from $100 a day to $110 a day."

113.    As set forth above, despite Ms. Nessi's multiple written requests and Defendants' legal obligation to furnish documents, including Plan documents, the current summary plan description, benefit statements, amendments to the Plan, and the Plan's trust agreement, Defendant Plan Administrator failed to produce copies of the plan documents to which Ms. Nessi is entitled under ERISA Section 104, 29 U.S.C. § 1024 and regulations thereunder.

114.    As a result of Defendants' acts and omissions set forth above, Ms. Nessi has been

harmed and her right to benefits and to pursue her was chilled, delayed and thwarted.

115.    Pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant Plan Administrator should be enjoined to timely furnish the requested Plan documents and amendments and other documents requested by Plaintiff and pursuant to ERISA Section 502(c)(1)(B), should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after each of Plaintiff's multiple written requests for Plan documents that Defendant Plan Administrator failed to produce through the date the requested documents are furnished to Ms. Nessi, together with costs and attorneys' fees.

WHEREFORE, Plaintiff requests that Judgment be entered in her favor and on behalf of the Class against Defendants as follows:

A.    Declaring that Defendants violated ERISA Sections 102, 104, 203, 204, 205, 404 and regulations thereunder;

B.    Declaring that Defendants violated Class members' rights under ERISA;

C.    Enjoining Defendants from violating ERISA sections 102, 104, 203, 204, 205, and 404 and regulations thereunder;

D.    Enjoining Defendants to recalculate Plaintiff's retirement benefits and restore the benefits that were reduced and withheld and to make Plaintiff and Class members whole for all losses, including pre-judgment and post-judgment interest;

E.    Enjoining Defendants to provide actuarially equivalent joint and survivor annuity forms of benefit and new disclosures and rights and options of election to all Class members;

F.    Ordering reformation of the Plan, *inter alia*, to provide for actuarially

equivalent joint and survivor annuities, and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed together with other make-whole relief;

G.  Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and Class members together with all profits attributable thereto;

H.  Surcharging the Plan Administrator for the full amount of Plaintiff's and Class members' withheld benefits and such other amounts to make Plaintiff and Class members whole;

I.  Removing and replacing the fiduciaries;

J.  Awarding Plaintiff $110 a day for each separate violation of Defendants' requirement to provide Plan documents;

K.  Awarding attorneys' fees and costs pursuant to ERISA section 502(g), 29 U.S.C. § 1132(g) and/or the common fund theory, and

L.  Awarding such other and further relief the Court deems just and proper.

Dated:  July 18, 2024                  Respectfully submitted,

/s/ Caryn C. Lederer

Susan Martin (*pro hac vice app. to be filed*)
Jennifer Kroll (*pro hac vice app. to be filed*)
Michael Licata (*pro hac vice app. to be filed*)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd St, Suite 185
Phoenix, AZ 85018
Tel: 602.240.6900
Fax: 602.240.2345
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

Caryn C. Lederer
Hughes Socol Piers Resnick & Dym, Ltd.

70 W. Madison St., Suite 4000
Chicago, IL 60602
312-580-0100
312-580-1994 (fax)
clederer@hsplegal.com
***Local Counsel***

*Attorneys for Plaintiff and the proposed Class*