**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTOINETTE NESSI, individually and on behalf of similarly situated individuals,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 24 C 6093** |
| **HONEYWELL RETIREMENT EARNINGS PLAN; HONEYWELL INTERNATIONAL INC.; JOHN DOE AND JANE DOE 1–10,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Antoinette Nessi has sued Honeywell International Inc., the Honeywell
Retirement Earnings Plan, and John Doe and Jane Doe 1–10 (collectively, Honeywell)
on behalf of herself and a class of similarly situated persons. Nessi alleges violations of
the Employee Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1024, 1053, 1054,
and 1055, and regulations thereunder. Honeywell has filed a motion to transfer under
28 U.S.C. § 1404(a) asking the Court to transfer this case to the Western District of
North Carolina. For the following reasons, the Court denies Honeywell's motion.

**Background**

Nessi was employed by Universal Oil Products Company (UOP) in Illinois from
approximately October 13, 1976 through December 9, 1988. During Nessi's
employment, UOP was acquired by the Signal Companies, which subsequently merged
with Allied Corporation and became known as AlliedSignal. Honeywell acquired
AlliedSignal after Nessi voluntarily terminated her employment. Due to her

employment, Nessi became vested and earned nonforfeitable rights to accrued pension benefits under what is currently known as the Honeywell Retirement Earnings Plan (the Plan).

Certain, specific terms of the Plan are at the center of Honeywell's motion to transfer.[1]  It is undisputed that, until 2017, the Plan did not contain a forum-selection clause.  According to Honeywell, in December 2016, it amended the Plan to include the following term:  "Effective January 1, 2017, a Claimant must bring any legal action in connection with the Plan in the Federal District Court of New Jersey."  Ponicall Decl., Ex. 2 at 5.  Honeywell was headquartered in New Jersey at the time.  Following this amendment, Honeywell sent notice of the change to Plan participants and beneficiaries, including Nessi, in April 2017.  *See id.*, Ex. 10 at 8 (noting, under a section titled "Plan changes," that the Plan now contains a "Venue Selection Clause" that is "[e]ffective January 1, 2017").  Honeywell moved its headquarters to Charlotte, North Carolina in 2019.  It claims to have amended the Plan's forum-selection clause in December 2020 to the following:  "Effective January 1, 2021, any action in connection with the Plan must be filed in the U.S. District Court for the Western District of North Carolina."  *Id.*, Ex. 3.  Honeywell again provided notice of the amendment to Plan participants and beneficiaries, including Nessi, in April 2021.  It also included notice of the allegedly valid forum-selection clause in annual notices sent to Nessi in 2022, 2023, and 2024.  *See id.*, Exs. 4–7, 9.

---

[1] The Court may consider well-pleaded facts in the complaint, as well as affidavits and other documents offered by the parties, in addressing a motion to transfer.  *See, e.g.*, *Simonian v. Monster Cable Prods., Inc.*, 821 F. Supp. 2d 996, 998 (N.D. Ill. Nov. 22, 2010).

The Court's hedging of its description of the above amendments is deliberate. Though Honeywell contends that the amendments are valid, Nessi challenges the amendments because, she contends, they were added in "violation of the Honeywell Plan's amendment provision, which expressly limited Honeywell's right to amend the Plan to amendments to ensure the Plan's qualification under ERISA and the IRS code." Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer at 4.

In support of her contention, Nessi points to a 2000 version of the Plan, which contains the following amendment provision:

> The Company shall have the right at any time and from time to time to amend this Plan in any manner it deems necessary or advisable in order to qualify (or maintain qualification of) this Plan and the Trust created under it under the appropriate provisions of the Code, except as otherwise provided in an applicable Supplement.

*Id.*, Ex. B at 67. According to Nessi, the forum-selection clause relied on by Honeywell as the main basis for its motion is invalid because it was not needed to qualify the Plan under the Internal Revenue Code.

Honeywell asserts that Nessi is incorrect in relying on the 2000 Plan language. According to Honeywell, the 2016 version of the Plan controls. The 2000 Plan's amendment provision was itself amended in 2010 to broaden the scope of the provision as follows:

> The Company shall have the right at any time and from time to time to amend this plan for any reason (including, but not limited, to in any manner it deems necessary or advisable in order to qualify (or maintain qualification of) this Plan and the Trust created under it under the appropriate provisions of the Code), except as otherwise provided in an applicable Supplement.

Ponicall Decl., Ex. 1 at 85. The language in this provision in the 2010 version of the Plan is the same as the language contained in the amendment provision in the 2016

3

version of the Plan.  Honeywell contends that the forum-selection clause upon which it relies in the present case was added via a valid amendment according to the procedure laid out in the 2016 Plan.

One other provision in the Plan is worth mentioning.  The 2016 version of the Plan contains a table of the various plans that were merged into the Plan based on Honeywell's various mergers and acquisitions.  *See id.*, Ex. 1 at 1–2.  Below this table, the 2016 Plan contains the following clause in its Preamble:

> In the case of each of the foregoing mergers, it was intended that the benefits, options, rights and features available to each Participant who was previously covered by a merged plan at the time of its merger be determined with reference to the terms and provisions of such merged plan in effect at the time of the merger (or if earlier, the date such Participant terminated employment under such plan), except as otherwise provided herein or required by law.

*Id.*, Ex. 1 at 2.  The Preamble to the 2000 version of the Plan contains a similar clause, though with notable omissions:

> In the case of each of the foregoing mergers, it was intended that the benefits, options, rights and features available to each participant who was previously covered by a merged plan at the time of its merger be determined with reference to the terms and provisions of such merged plan in effect at the time of the merger.

Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at iii.

Comparing the two versions of the Preamble, the 2016 version freezes the benefits, options, rights, and features of the Plan either as of the time of the relevant merger or the time when the Plan participant terminated his or her employment, whichever is earlier.  But it includes a window:  the "except as otherwise provided herein or required by law" language.  The 2000 version freezes the benefits, options, rights, and features as of the time of the relevant merger only, but it does not include a window

like the one in the 2016 version.

The parties dispute which merged plan applies to Nessi. Nessi contends that "[a]t the time she terminated employment she was a participant in and had earned vested rights to benefits under the UOP (ALLIED-SIGNAL) RETIREMENT INCOME PLAN (Effective August 22, 1988) (the '1988 UOP Pension Plan')." *Id.* at 2–3. Honeywell argues that Nessi's pension benefits are governed by "The Signal Companies, Inc. Retirement Plan (the '1986 Signal Plan'), rather than the 1988 UOP Plan." Defs.' Reply Mem. in Supp. of Mot. to Transfer at 2 n.1. According to Honeywell, however, determining which merged plan applies to Nessi "does not affect the instant motion" because "[t]he two plans use virtually identical language in their relevant provisions" and therefore "[t]he analysis is thus identical whichever plan applies." *Id.* Nessi, for her part, contends that neither the 1986 Signal Plan nor the 1988 UOP Plan contains a forum-selection clause.

On the record before the Court, it is unclear when the so-called 1986 Signal Plan merged into the Honeywell Plan. Looking to the table in the 2016 Plan's Preamble, referenced above, there is no line item listing "The Signal Companies, Inc. Retirement Plan," "the 1986 Signal Plan," or any plausibly similar formulation. *See* Ponicall Decl., Ex. 1 at 1–2. However, based on Honeywell's contention that the 1986 Signal Plan's successor plan—the "Allied Signal Inc. Retirement Plan"[2]—merged into the Honeywell Plan on June 30, 2000, and that the UOP plan merged on December 31, 2007, it appears that whichever plan governs Nessi's pension benefits merged into the 2000

---

[2] The table in the 2016 Plan does not list a merged plan titled "Allied Signal Inc. Retirement Plan," but it does list a merged plan titled "AlliedSignal Inc. Retirement Program," which merged with the Honeywell Plan on June 30, 2000.

version of the Honeywell Plan.[3]

## Discussion

A court may transfer a case "to any other district or division where it might have been brought or to any district or division to which all parties have consented" "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Honeywell seeks transfer to the Western District of North Carolina under section 1404(a), citing the 2016 Plan's forum-selection clause.[4]

Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. of Tex.*, 571 U.S. 49, 59 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. Enforcement of a valid forum-selection clause protects the parties' "legitimate expectations and furthers vital interests of the justice system." *Id.* at 63. Accordingly, based on section 1404(a)'s requirement to consider whether a transfer would promote "the interests of justice, a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (citation and quotation marks omitted).

---

[3] The UOP Plan merged with the Honeywell Plan in 2007. Based on the versions of the Plan that have been provided to the Court—one from 2000, one from 2010, and one from 2016—it appears that the UOP Plan merged with the 2000 version of the Plan, as the next version presented to the Court is a 2010 version of the Plan.

[4] To avoid confusion, the Court will reference the forum-selection clause as being contained in the 2016 version of the Plan. To be precise, the 2016 version of the Plan contains the amendment procedure that Honeywell contends allowed it to amend the plan first in 2016 and then again 2020 to include the current forum-selection clause. Because both parties refer to the 2016 Plan's forum-selection clause, the Court elects to describe the forum-selection clause in the same manner.

Honeywell contends that the applicable Plan contains a valid forum-selection clause for the Western District of North Carolina and that there are no unusual circumstances that would warrant precluding transfer under the clause. It argues that the Court should enforce the clause and transfer the case to the Western District of North Carolina. Nessi opposes transfer on multiple grounds. First, she contends that the forum-selection clause does not apply to her claims. Alternatively, if the Court determines that the forum-selection clause does apply, Nessi contends the clause is invalid because it was added in violation of the Plan's amendment procedure as laid out in the 2000 version of the Plan. Finally, should the Court find the forum-selection clause is valid, Nessi contends that the clause is not enforceable against her.

The Court will begin by addressing whether the Plan's forum-selection clause was properly added via the amendment procedure such that it applies to Nessi's suit.

## A. Forum-selection clause

A party seeking to enforce the terms of a contract bears the burden of proving the existence of those terms. *See Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, 407 F.3d 876, 880–81 (7th Cir. 2005); *see also Knight v. N.Y. & Presbyterian Hosp.*, No. 92, 2024 WL 4874340 (N.Y. Nov. 25, 2024) (noting that the party moving for a change of venue pursuant to a forum-selection clause "is in effect seeking to enforce a contractual provision" and that "the proponent of the motion bears the initial burden to establish the authenticity of the writing for purposes of a motion to enforce a contractual venue provision").[5]

---

[5] Nessi contends that her pension rights vested under the UOP Plan, which states that "to the extent that state law is applicable, the laws of the State of New York shall apply." Licata Decl., Ex. A at 35.

Honeywell contends that the Plan contains a valid forum-selection clause. Further, it argues, the broad language of the forum-selection clause—requiring that "any action in connection with the Plan" be brought in the Western District of North Carolina—encompasses Nessi's suit because she "seeks to amend the Honeywell Plan to afford her additional benefits."  Defs.' Reply Mem. in Supp. of Mot. to Transfer at 1. Nessi contends that Honeywell has failed to meet its burden of establishing that a valid forum-selection clause applies to her claims.

The broad language of the forum-selection clause certainly encompasses the types of claims Nessi asserts; she does not argue otherwise.  But that is not enough to establish that the forum-selection clause governs this case.  Rather, Honeywell must show that the forum-selection clause applies to Nessi in the first place.  In this case, that boils down to a determination of whether the forum-selection clause was added to the Plan in a manner consistent with the applicable amendment procedures in a way that makes it apply to Nessi.  For the reasons set forth below, the Court finds that Honeywell has not met its burden to establish that the forum-selection clause applies to Nessi's suit.

### 1.    Applicability

As a preliminary matter, Nessi appears to rely on language from both the 2000 Plan and the 2016 Plan to support her argument that the terms of either the UOP Plan or Signal Plan governs this suit.  But Nessi cannot have it both ways—either the 2000 Plan applies or the 2016 Plan applies, and she must take the bad with the good. Therefore, Nessi cannot rely on language in the 2016 Plan's Preamble freezing her rights at the time her employment terminated without accepting that the broader

8

amendment procedure in the 2016 Plan applies as well. So, as a starting point, the Court must begin by determining which version of the Honeywell Plan applies.

Based on the shared language in both the 2000 Preamble and the 2016 Preamble, Nessi's benefits, rights, options, and features are to be determined by looking to the terms and provisions of the "merged plan in effect at the time of the merger." Ponicall Decl., Ex. 1 at 2; Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at iii. Nessi and Honeywell dispute which merged pension plan applied to Nessi when she left employment in 1988. But as outlined earlier, irrespective of which of the two plans applied to Nessi, the plan applicable to her merged into the 2000 version of the Honeywell Plan. Accordingly, the Court will begin its analysis with the 2000 version of the Plan.

The Preamble to the 2000 Plan states:

> In the case of each of the foregoing mergers, it was intended that the benefits, options, rights and features available to each participant who was previously covered by a merged plan at the time of its merger be determined with reference to the terms and provisions of such merged plan in effect at the time of the merger.

Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at iii. Nessi's pension plan merged with the Honeywell Plan on either June 30, 2000 or December 31, 2007. *See* Defs.' Reply Mem. in Supp. of Mot. to Transfer at 2 n.1. Therefore, based on the language in the 2000 Preamble, Nessi's benefits, options, rights, and features are to be determined by the terms and provisions of a plan that merged into the Honeywell Plan at least three years before the amendment provision relied on by Honeywell was created. The 2000 Plan's amendment provision was amended in 2010; that 2010 amendment established the broad amendment provision that exists in the 2016 Plan. And it is undisputed that

9

neither the Signal Plan nor the UOP Plan contains a forum-selection clause.  *See* Defs.' Reply Mem. in Supp. of Mot. to Transfer at 4; Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer at 3.

Nessi contends that, because her pension plan did not contain a forum-selection clause when it merged with the Honeywell Plan, among the rights governed by the merged plan is "the right under ERISA to bring a civil lawsuit in accordance with ERISA's venue provision . . . which enabled her to bring suit where the plan is administered, where the breach took place, or where a defendant resides or may be found."  Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer at 4.

Honeywell counters that this argument "misconstrues the language of the Honeywell Plan."  Defs.' Reply Mem. in Supp. of Mot. to Transfer at 2.  Specifically, Honeywell argues that both the 2000 and 2016 Preambles to the Honeywell Plan contain the same provision:  "[A]ll provisions of this Plan relating to administration and fiduciary responsibility shall apply to the Supplements."  Ponicall Decl., Ex. 1 at 2; Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at iii.  Both Preambles state that "[e]ach merged plan described [herein] is described in a Supplement to this Plan."  Ponicall Decl., Ex. 1 at 2; Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at iii.  Therefore, according to Honeywell, this provision applies to all "participants who were previously covered by a merged plan," including Nessi, because all merged plans have a corresponding supplement.  Defs.' Reply Mem. in Supp. of Mot. to Transfer at 3.  And because a forum-selection clause is inherently administrative, Honeywell argues, it "governs all participants, including those, like Nessi, who were members of merged plans."  *Id.*

10

Honeywell's argument is not persuasive.  The referenced language in the Preamble states that each merged plan is described in a supplement and, in turn, that provisions in the Plan relating to administration apply to the supplements.  Therefore, Honeywell says, the forum-selection clause applies to Nessi.  Inherent within this argument, then, is that Nessi's merged plan has a corresponding supplement.  But Honeywell has repeatedly stated that there is *no* supplement applicable to Nessi.  If that is so, then a provision incorporating into the supplements any aspects of the Plan related to administration is irrelevant.  In short, Honeywell, not Nessi, appears to be misconstruing the language at issue.  Honeywell cannot assert that this provision applies to all plan participants previously covered by a merged plan when the literal terms of the provision state that it applies to the supplements—particularly when Honeywell is adamant that no supplement applies to Nessi.

Honeywell next contends that the quoted language from the Preamble upon which Nessi relies limits its applicability to benefits, rights, options, and features and that the language in the Preamble covers only substantive terms of the Honeywell Plan. "Substantive terms," Honeywell says, essentially is a reference to benefits available under the Plan—not the right to sue, or where the right to sue may be exercised.  To support this, Honeywell relies on Seventh Circuit precedent finding that ERISA's statutory venue provision "is not phrased in rights-granting terms" because use of the phrase "may be brought . . . is entirely permissive, and no other statutory language precludes the parties from contractually narrowing the options to one of the venues listed in the statute."  *In re Mathias*, 867 F.3d 727, 732 (7th Cir. 2017) (citation and quotation marks omitted).  In short, Honeywell argues, Nessi cannot rely on the

referenced clause in the Preamble because she does not have a right to litigate this matter in any forum, but only a right to pension benefits that have vested and accrued as defined in the Plan.

This particular point by Honeywell is persuasive, at least as far as it goes. The Seventh Circuit in *Mathias* foreclosed any contention that Nessi has rights under ERISA to sue in a specified venue based on the statutory language. Rather, "ERISA plans are a special kind of contract," and contract law permits "contractual forum-selection clauses . . . even in the absence of arm's-length bargaining." *Id.* at 731. But although Honeywell is correct that the language in the Preamble does not require the Court to determine Nessi's so-called right to sue in a particular forum based on the terms in the merged plan, this does not end the analysis. The Court must still ask whether, under the terms of the 2000 Plan—the Plan into which Nessi's pension plan merged—Honeywell properly amended the Plan such that the 2016 Plan's amendment provision, and subsequently the forum-selection clause added under that amendment provision, applies to Nessi.

Finally, Honeywell argues that any benefits, rights, options, and features that would be governed by a merged plan are irrelevant due to another provision in the 2016 Preamble stating that the terms of the merged plans apply "except as otherwise provided herein or required by law." Ponicall Decl., Ex. 1 at 2. But this argument has no bearing here, where the Court is conducting its analysis according to the 2000 version of the Plan. The above-referenced language is in the 2016 Preamble and is not found in the 2000 Preamble.

The Court next turns to the question of whether, under the terms of the 2000

Plan, Honeywell properly amended the amendment provision such that it applies to Nessi.  This is important because the 2000 Plan does not authorize an amendment to include a forum-selection clause.  To repeat, the 2000 version of the Honeywell Plan contains the following amendment provision:

> The Company shall have the right at any time and from time to time to amend this Plan in any manner it deems necessary or advisable in order to qualify (or maintain qualification of) this Plan and the Trust created under it under the appropriate provisions of the Code, except as otherwise provided in an applicable Supplement.

*Id.*, Ex. B at 67.  No party suggests that the forum-selection clause was needed or advisable to maintain the Plan's qualification under the Internal Revenue Code.

Honeywell contends, however, that this provision in the 2000 Plan did not limit its ability to amend the Plan because it has "the inherent right to amend its plan without specifying its reservation of that right in the Honeywell Plan."  Defs.' Reply Mem. in Supp. of Mot. to Transfer at 5.  To support this contention, Honeywell asserts that "[i]t is black letter law that '[e]mployers . . . are generally free under ERISA, for any reason, at any time, to adopt, modify, or terminate welfare plans.'"  *Id.* (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)).

That is an overstatement.  In particular, Honeywell overstates the Supreme Court's language in *Curtiss-Wright*.  The issues before the Court in *Curtiss-Wright* were "whether a plan provision stating that '[t]he Company' reserves the right to amend the plan states a valid amendment procedure under § 402(b)(3) and, if not, whether the proper remedy is to declare this or any other amendment void *ab initio*."  *Curtiss-Wright*, 514 U.S. at 78.  Though the Supreme Court did note that employers are "generally free under ERISA" to amend welfare plans, it also stated that ERISA "follows standard trust

law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." *Id.* at 78, 85. In other words, the language in *Curtiss-Wright* upon which Honeywell relies to support an inherent right to amend does not go as far as Honeywell contends. To the contrary, the last-quoted language indicates that if a company outlines specific procedures regarding its ability to amend, "it is bound" to those procedures.

*Curtiss-Wright* is also factually distinguishable from the present case, and the factual distinctions matter. In *Curtiss-Wright*, the employee benefit plan's amendment provision stated that "[t]he Company reserves the right at any time to amend the plan." *Id.* at 75 (internal quotation marks omitted). The Supreme Court thus considered only whether such a provision properly adhered to ERISA's requirement that every employee benefit plan provide "'a procedure for amending such plan, and for identifying the persons who have authority to amend the plan.'" *Id.* (quoting 29 U.S.C. § 1102(b)(3)). The Court determined that the provision at issue did meet this requirement of ERISA because the provision identified "'[t]he Company' as 'the perso[n]' with amendment authority" and contained a procedure for amending the plan by "say[ing] the plan may be amended by a unilateral company decision to amend, and only by such a decision— and not, for example, by the unilateral decision of a third-party trustee or upon the approval of the union." *Id.* at 78–79. In reaching this conclusion, the Court expressly did not address what remedy would be proper had it found the amendment provision did not meet ERISA's requirements. *Id.* at 85. And in remanding the case to the court of appeals, the Court also noted that determination of whether the amendment provision met ERISA's requirements was a separate question from whether the amendment

14

provision had been properly followed:

> On remand, the Court of Appeals will have to decide the question that has always been at the heart of this case: whether Curtiss-Wright's valid amendment procedure—amendment 'by the Company'—was complied with in this case. The answer will depend on a fact-intensive inquiry, under applicable corporate law principles, into what persons or committees within Curtiss-Wright possessed plan amendment authority, either by express delegation or impliedly, and whether those persons or committees actually approved the new plan provision contained in the revised [Summary Plan Description].

*Id.*

Contrary to Honeywell's contention, *Curtiss-Wright* does not express or establish "black letter law" that an employer has the sweeping "inherent authority" to amend a plan whenever and however it chooses. Rather, the Court made clear its holding was limited to whether an amendment provision properly adhered to ERISA's requirements set out in section 1102(b)(3). Further, the Court emphasized that ERISA "follows standard trust law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, *it is bound to that level*." *Id.* (emphasis added). In short, the Court in *Curtiss-Wright* made it clear that an employer's right to amend is limited to "whatever level of specificity a company ultimately chooses." *Id.*; *see also Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka and Santa Fe Ry. Co.*, 520 U.S. 510, 515–16 (1997) ("An employer may, of course, retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in the plan.").

Law in the Seventh Circuit supports the determination that Honeywell is bound by the amendment procedure it elected to put in the Plan. *See Albedyll v. Wis. Porcelain Co. Revised Ret. Plan*, 947 F.2d 246, 256 (7th Cir. 1991) (affirming the district court's

invalidation of an amendment because the amendment did not adhere to the specific procedure outlined in the amendment provision). In *Albedyll*, Wisconsin Porcelain Company (WPC) provided employees a pension plan with the following amendment provisions:

> 11.01. Except as hereinafter provided, the Company shall have the right to amend the Plan at any time and from time to time and to any extent that it may deem advisable.
>
> 11.02. Any such amendment shall be set out in writing and executed by all of the partners of the Company.

*Id.* at 249. Despite the procedure laid out in section 11.02 of the pension plan requiring "all of the partners of the Company" to sign off on an amendment, WPC amended the plan in 1976 with the signed approval of "only the six active partners." *Id.* at 250. The district court invalidated the 1976 amendment "because [it] was signed by only the *active* partners [and therefore] it did not conform with the plan's explicit requirement that *all* partners must approve." *Id.*

The Seventh Circuit in *Albedyll* affirmed the district court's invalidation of the 1976 amendment. As relevant here, the Seventh Circuit found that "[t]he plan clearly reserves amendment authority to *all* partners for changes not required by law," relying on the Restatement (Second) of Trusts for the premise that "[i]f the settlor reserves a power to modify the trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances." *Id.* at 254. The court noted that "the WPC plan contained an explicit amendment procedure, the participants were harmed by its violation and ERISA and trust law provide a remedy." *Id.* at 255. Specifically, section 1132(a)(1)(B) of ERISA "authorizes suits in a situation where participants or beneficiaries seek benefits due or enforcement or clarification of

16

rights under a plan," and section 1132(a)(3) "authorizes beneficiaries or fiduciaries to bring an action enjoining any act or practice violating ERISA or plan terms, or enforcing the provisions of ERISA or plan terms." *Id.* The Seventh Circuit concluded that "[t]hese provisions allowed participants to seek invalidation of the [1976 amendment]." *Id.*

The majority of circuits have similarly held that "there must be amendment procedures in a plan, and those amendment procedures must be followed for the valid adoption of an amendment." *Overby v. Nat'l Ass'n of Letter Carriers*, 595 F.3d 1290, 1295 (D.C. Cir. 2010); *see also Coffin v. Bowater Inc.*, 501 F.3d 80, 91–92 (1st Cir. 2007) ("[A]n ERISA plan amendment must be in writing . . . and the amendment must meet any other requirements laid out for such amendments in the plan's governing documents."); *Depenbrock v. Cigna Corp.*, 389 F.3d 78, 82–83 (3d Cir. 2004) ("[A]n amendment is ineffective if it is inconsistent with the governing instruments. . . . ERISA specifies that a valid amendment can only be made in the manner specified in the plan document."); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–59 (4th Cir. 1992) ("[A]ny modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing."); *Halliburton Co. Benefits Comm. v. Graves*, 463 F.3d 360, 371–72 (5th Cir. 2006) ("In order to amend a welfare benefit plan governed by ERISA, the employer must provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan . . . . [O]nly an amendment in accordance with the plan's procedure is effective." (internal citations and quotation marks omitted)); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003) ("Section 402 of ERISA requires employee benefit plans to specify both an amendment procedure and a procedure for identifying persons with authority to

amend. These amendment procedures, once set forth in a benefit plan, constrain the employer from amending the plan by other means." (citation omitted)); *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1283 (11th Cir. 2003) ("Having created a particular [amendment] procedure, it seems evident to us that the parties to the agreement must follow that procedure in order to create enforceable amendments to their contract.").

In sum, then, Honeywell's apparent contention that it has the authority to amend the Plan in any manner it sees fit is unsupported by law. The cases relied on by Honeywell in its motion do not change this determination. In each of these cases, it was undisputed that the plan at issue contained an amendment procedure permitting amendment for any purpose and at any time—much like the amendment provision contained in the 2016 version of the Honeywell Plan. But here the question is whether the revised and more flexible amendment provision in the 2016 Plan—under which the forum-selection clause was added—properly applies to Nessi. The plan amendment that revised this provision, however, was not necessary to qualify the plan under the Internal Revenue Code (Honeywell does not argue that otherwise). Thus the revised amendment provision does not apply to Nessi.

As a result, Nessi contends, the operative amendment provision was the one found in the 2000 Plan. She further contends that the forum-selection clause that was added to the Plan later on does not apply to her, as it was added in contravention of the 2000 Plan's amendment provision, "which expressly limited Honeywell's right to amend the Plan to amendments to ensure the Plan's qualification under ERISA and the IRS Code." Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer at 4. The Court finds this argument persuasive. As case law from the Supreme Court, this circuit, and a majority

18

of other circuits makes clear, insofar as Nessi's rights are concerned, Honeywell was required to follow the amendment procedure laid out in the 2000 version of the Plan—the one that applied to Nessi—in order for the disputed amendment in the 2016 version of the Plan to apply to her. Based on the record before the Court, Honeywell did not do so with respect to the forum-selection provision. The later amendments that added this provision did not comport with the 2000 Plan's amendment procedure, for the obvious reason that expanding the amendment procedure was not necessary "to qualify (or maintain qualification of) this Plan and the Trust created under it under the appropriate provisions of the Code." Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at 67.

Based on the above analysis, the Court finds that Honeywell has failed to establish that the forum-selection clause upon which it relies applies to Nessi's claims. To get there, Honeywell would have to show that the amendment procedure in the 2016 version of the Plan applied to Nessi, and as the Court explained above, Honeywell has not shown this.

To put it another way, the forum-selection clause relied on by Honeywell was added according to the terms of the 2016 Plan's amendment procedure. But the 2000 Plan's narrower amendment procedure is the one that applies to Nessi, and the addition of the forum-selection clause did not conform to the procedural limitations expressed in the 2000 Plan's amendment provision. Specifically, a forum-selection clause is not necessary to ensure the Plan's qualifications under ERISA or the IRS Code. Accordingly, Honeywell has failed to establish that the forum-selection clause applies to Nessi.

**2. Enforceability**

Honeywell contends that a forum-selection clause is "presumptively valid and enforceable unless" one of three circumstances applies:

> (1) [its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (citation and quotation marks omitted). Honeywell argues that because none of these circumstances exist, there are no grounds for this Court to find the forum-selection clause is unenforceable.

Honeywell's argument is not persuasive. It seemingly misses the obvious fact that forum-selection clauses are *presumptively* valid. Presumptively does not mean always. Here Nessi has sufficiently rebutted the presumption—to the extent she needs to do so—by showing that the forum-selection clause does not apply to her claims. As a result, Nessi is not required to show that the amendment procedure in the 2016 plan was the result of fraud. As the Seventh Circuit made clear in *Albedyll*, ERISA enables the Court to determine, as it has, that the 2016 amendment procedure does not apply to Nessi and, therefore, the forum-selection clause added under the 2016 amendment does not apply to the present lawsuit. *See Albedyll*, 947 F.2d at 255; *see also Shaw*, 353 F.3d at 1283 (invalidating a purported amendment to an ERISA-covered disability plan because of lack of compliance with plan amendment procedures without any discussion of bad faith, active concealment, or detrimental reliance).

To summarize, to apply to Nessi, any amendment to the Plan had to follow the amendment procedure as expressed in the 2000 version of the Plan. Because that

version only permits amendments "to qualify (or maintain qualification of) this Plan and the Trust created under it under the appropriate provisions of the Code," Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer, Ex. B at 67, the subsequent amendments adding and then changing the forum-selection clause do not apply to Nessi's suit.  Accordingly, the forum-selection clause is not enforceable against her.  Further, the Preamble in the 2000 version of the Plan effectively freezes the benefits, options, rights, and features to the time of the relevant merger.  In Nessi's situation, that merger occurred in either 2000 or 2007.  It is undisputed that neither of these plans contained a forum-selection clause; the forum-selection clause in the 2016 Plan was not effective until 2017.  Thus the controlling version of the Plan as it relates to Nessi does not contain a forum-selection clause.

### 3. Invalidity

Because the Court has concluded that the forum-selection clause does not apply to Nessi's claims and is therefore not enforceable against her in the present action, it does not reach the merits of her remaining arguments regarding the validity of the forum-selection clause.

The Court therefore turns to the question of whether, absent an applicable forum-selection clause, transfer of the present action to the Western District of North Carolina is appropriate under section 1404(a).

### B. Transfer absent a forum-selection clause

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  To justify transfer, the

moving party must demonstrate that "(1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009) (citation omitted).  It is undisputed that the first two requirements are met.

On the two remaining requirements, the Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co.*, 571 U.S. at 62–63 (quoting § 1404(a)).  But unless the balance tips strongly in favor of the defendant, the plaintiff's choice of forum "should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The party seeking transfer bears the burden of demonstrating that the proposed alternate forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

### 1.      Private-interest factors

A court should consider four private-interest factors when evaluating a motion to transfer:  "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of viewing the premises, if appropriate; and (4) other practical issues, including the ease of enforcement of any ultimate judgment." *Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 359 (7th Cir. 2022); *see also Atl. Marine Const. Co.*, 571 U.S. at 62 n.6.  This list of factors, however, is not exhaustive.  *See, e.g.*, *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (listing relevant private-

interest factors as "the availability of and access to witnesses, and each party's access to and distance from resources in each forum," as well as "the location of material events and the relative ease of access to sources of proof").

In this case, the private-interest factors weigh in favor of Nessi—though perhaps only marginally. As a preliminary matter, Nessi's choice to file suit in the Northern District of Illinois is entitled to some weight. But Nessi is domiciled in Ohio; accordingly, the degree deference given to her choice of forum is less than would be the case if she had filed this suit in her home forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) ("[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. . . . [A] foreign plaintiff's choice deserves less deference.").

Regarding the factors laid out in *Instituto Mexicano*, the first, third, and fourth factors are neutral. There are no premises to view that are relevant to the matter, and the sources of proof—digital files of Plan records and materials—can be easily accessed and transmitted anywhere. There is also little concern regarding enforcement of the final judgment in this matter. Nessi is seeking declaratory and injunctive relief regarding the administration of the Plan; ensuring that Honeywell properly adheres to the final judgment of this Court, should Nessi prove successful in her claim, would be just as easy for this Court as it would be for a district court in North Carolina. Accordingly, these private-interest factors do not tip the balance one way or the other.

The remaining private-interest factor, which encompasses the convenience to the parties and witnesses, favors Nessi. Because "the central purpose of any [motion to transfer] inquiry is to ensure that the trial is convenient," Nessi's argument that it is

23

considerably more convenient to travel and stay in Chicago, as opposed to Charlotte, is persuasive.  *See id.* at 256.  Nessi specifically contends that "it would be very inconvenient and expensive to require Plaintiff to attend court in North Carolina."  Pl.'s Resp. in Opp. to Defs.' Mot. to Transfer at 14.  Nessi further contends that "[t]o the extent depositions will be conducted in person, Plaintiff will bear the burden of traveling to Defendants' witnesses and Defendants will have to travel to depose Plaintiff."  *Id.*  Nessi does not state with specificity why it would be less inconvenient to travel to Chicago than North Carolina beyond the fact that she "resided in this District until recently."  *Id.*  Honeywell has put forth evidence that Nessi's home in Bremen, Ohio, is nearly equidistant from Chicago and Charlotte; based on a Google Maps search, Honeywell contends that Nessi's home is approximately 370 miles from Chicago and 392 miles from Charlotte.  *See* Defs.' Reply Mem. in Supp. of Mot. to Transfer at 14.  But although Honeywell may be correct regarding the physical distance, convenience involves more than that.  Rather, courts assess a party's "access to and distance from *resources* in each forum."  *Rsch. Automation, Inc.*, 626 F.3d at 978 (emphasis added).  Given that Nessi has counsel in Illinois, it is at least reasonable that it would be more convenient for her to access the legal resources available to her if the case remains here.  Further, "[w]here the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer."  *Id.*  Accordingly, the Court finds that the private-interest factors marginally weigh against transfer.

### 2.    Public-interest factors

A court should also consider five public-interest factors:

(1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Instituto Mexicano*, 29 F.4th at 360; *see also Atl. Marine Const. Co.*, 571 U.S. at 62 n.6 (listing the public-interest factors as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law").

As a starting point, the third, fourth, and fifth factors have no real bearing on the analysis here. This is not a diversity case, and the suit involves primarily federal law issues, so the third factor is neutral. Accordingly, no one has identified any potential issues regarding conflicts of laws or the application of foreign law, making the fourth factor neutral as well. Finally, there is no right to a jury trial in an ERISA case, so the fifth factor does not impact the balancing of the public-interest factors. All that remains, then, are any administrative difficulties due to potential court congestion and any local interests that either Illinois or North Carolina may have in adjudicating the suit.

Regarding the first factor, "[t]o the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved." *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."). Honeywell relies on statistics obtained from the United States District Courts–National Judicial Caseload

25

Profile showing that, "as measured in March 2024, the median time from filing to trial is 27.0 months in the Western District of North Carolina and 55.4 months in [the Northern District of Illinois]." Defs.' Mot. to Transfer at 12.

Honeywell's reference to the median time from filing to trial has limited value. Put succinctly, this statistic amounts to a view from 30,000 feet, and not necessarily a view that is material. Among other things, these figures represent averages for all judges and all types of cases. They therefore say nothing about how long it takes to get to trial in a specific case, let alone in the case of the type at issue here. This is made more evident by the differences between the Northern District of Illinois and the Western District of North Carolina. As of March 31, 2024—the date when the Judicial Caseload Profile was published—the Northern District of Illinois has twenty-two judgeships, and the Western District of North Carolina has five. This difference alone illustrates the limitations of extracting a median time-to-civil-trial figure and relying solely on that to conclude that it will take twice as long for a civil matter to go to trial in this District as compared to the Western District of North Carolina.

Another relevant statistic, not cited by Honeywell, is the median time from filing to disposition. Only about two percent of all federal civil cases go to trial, meaning that the other ninety-eight percent do not. Looking to the figures regarding the time-to-disposition, those numbers do not support Honeywell's position that cases proceed more expeditiously in the proposed transferee district than here. Across the last three years, the time-to-disposition in the Northern District of Illinois was 7.4 months in 2022, 6.7 months in 2023, and 5.6 months in 2024. By comparison, the time-to-disposition in the Western District of North Carolina was 10.6 months in 2022, 7.9 months in 2023,

and 5.6 months in 2024.  That statistic, though concededly also a general, all-judges, all-types-of-cases figure, indicates that on average, cases proceed at relatively the same rate in both districts, actually a bit more quickly in this District.  In sum, the first factor weighs at least somewhat against transfer.  That aside, the Court is more than willing to take off the table any concern about a longer time to trial:  at the next status conference, it will set a trial date no later than twenty-seven months from when the case was filed, in other words, no later than October 2026.

The second public interest factor weighs somewhat in favor of transfer.  The Plan is administered in North Carolina, where Honeywell is headquartered, and the Plan Administrator and various other Honeywell employees who administer the Plan work there.  Honeywell also argues that this suit is a class action and argues North Carolina has a "substantial interest" in adjudicating a suit in which "one of its corporations is the subject of a class action that literally spans all 50 states." *Billings v. Ryze Claim Sols., LLC*, No. 1:17-CV-1600 AWI JLT, 2018 WL 2762117, at *15 (E.D. Cal. June 8, 2018). But the case is not a class action yet, and it remains to be seen whether the Court will certify a Plan-wide class, a narrower class that might not span the entire country, or no class at all.  For her part, Nessi contends that Illinois has an interest in handling this case because she was employed in Illinois at the time her pension benefits vested.

Looking at these points as a whole, North Carolina has a somewhat stronger interest in this matter.  Nessi is not currently domiciled in Illinois; the primary connection to this state is that the entity for which she worked was located here.  North Carolina has a somewhat stronger interest because that is where the Plan is currently administered.

27

In sum, the public-interest factors roughly balance out, or at most weigh only marginally in favor of transfer.

To recap, the private-interest factors weigh marginally in favor of denying the motion to transfer and the public-interest factors weigh marginally in favor of granting the motion. But the overriding principle underlying transfer is convenience, and Nessi has put forth a viable argument that she will be more inconvenienced if the case is transferred to North Carolina than Honeywell would be inconvenienced if the case remains here. For the reasons discussed, the Court concludes that Honeywell has not shown that the proposed transferee forum is "clearly more convenient." *Coffey*, 796 F.2d at 220. The Court therefore declines to transfer the case under section 1404(a).

## Conclusion

For the reasons stated above, the Court denies Honeywell's motion to transfer this case to the Western District of North Carolina [dkt. no. 23]. The parties are directed to promptly confer so that a discovery and pretrial schedule, as well as a trial date, may be set at the status hearing on February 28, 2025.

MATTHEW F. KENNELLY
United States District Judge

Date: February 26, 2025

28