## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINETTE NESSI, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 24 C 6093 |
| HONEYWELL RETIREMENT EARNINGS PLAN; HONEYWELL INTERNATIONAL INC.; JOHN DOE AND JANE DOE 1–10, | ) ) ) ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Antoinette Nessi has sued Honeywell International Inc., the Honeywell Retirement Earnings Plan, and John Doe and Jane Doe 1–10 (collectively, Honeywell) on behalf of herself and a class of similarly situated persons. Nessi alleges violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1024, 1053, 1054, and 1055, and regulations thereunder. Honeywell has moved to dismiss Nessi's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court denies Honeywell's motion.

### Background

The Court will assume familiarity with the facts as discussed in its prior Order in this case, *Nessi v. Honeywell Retirement Earnings Plan*, No. 24 C 6093, 2025 WL 623025 (N.D. Ill. Feb. 26, 2025). Additional facts are taken from the amended complaint and relevant documents in the record.

To briefly recap, Nessi was employed by Universal Oil Products Company (UOP)

in Illinois from approximately October 13, 1976 through December 9, 1988. During Nessi's employment, UOP was acquired by the Signal Companies, which merged with Allied Corporation and became known as AlliedSignal. Honeywell acquired AlliedSignal after Nessi voluntarily terminated her employment. Due to her employment, Nessi became vested and earned nonforfeitable rights to accrued pension benefits under what is currently known as the Honeywell Retirement Earnings Plan (the Plan).

Under the Plan's terms, the normal retirement date is "the first day of the calendar month coincident with or next following the participant's 65th birthday." Am. Compl. ¶ 19. The Plan's default payment of benefits for a single participant is a straight life annuity (SLA), which pays a fixed amount each month from the time the benefit commences until the participant's death. Johnson Decl., Ex. 1 at 50. For married participants, the Plan's default benefit form is a qualified joint and survivor annuity (JSA). *Id.* Under a JSA, a participant's spouse is entitled to receive a portion of the participant's monthly benefit if the participant pre-deceases the spouse. The Plan also provides a pre-retirement survivor annuity (PSA) to a surviving spouse if a vested participant dies before starting to receive retirement benefits. *Id.*, Ex. 1 at 48.

The Plan's default form of JSA is a 50 percent joint and survivor annuity benefit (50% J&S). The Plan also provides two optional forms of joint and survivor annuity benefits: a 75 percent annuity benefit (75% J&S) and a 100 percent annuity benefit (100% J&S). Under each of these benefit options, the participant's monthly benefit equals the amount of the SLA received during the participant's lifetime, reduced to account for a survivor benefit that the participant's surviving spouse will receive in the event of the participant's death. The Plan requires the spouse's written consent if a

2

participant chooses one of the optional benefit forms.  *Id.*, Ex. 1 at 50.

Nessi alleges that she commenced her benefits under the Plan approximately on March 1, 2023 when she was seventy years old.  At the time of her retirement and the commencement of her benefits under the Plan, Nessi was and is married to Robert Maguda.  Nessi alleges that when she first notified Honeywell of her plans to retire, it presented her with the benefit amounts available under the Plan's optional pension benefit forms.  According to Nessi, she elected a 50% J&S benefit, which Honeywell initially "stated would be a monthly benefit in the amount of $1,158.58 per month" beginning on March 1, 2023.  Am. Compl. ¶ 44.  Nessi alleges, however, that after she submitted her pension election form, Honeywell informed her that she would only receive "$1,150.37 per month beginning on March 1, 2023 and that Mr. Maguda would receive a benefit upon her death of $575.19 per month."  *Id.* ¶ 45.  Nessi asserts that she did not receive any payment in March 2023 and that in early April Honeywell advised her that she would "receive a combined total payment of $1,707.46 for two months of benefits (March and April 2023)."  *Id.* ¶¶ 46–47.  Then, on April 4, 2023, Nessi states that she received "$1,552.13, which was purportedly a benefit for two months."  *Id.* ¶ 48.  Nessi alleges that Honeywell further reduced her monthly payments to $853.73 per month beginning in May 2023.  *Id.* ¶ 49.  According to the complaint, she spent the next several months unsuccessfully asking Honeywell to correct her monthly payments to the amount initially represented to her.  Finally, in September 2023, Nessi asserts that Honeywell informed her it would update her monthly payments to $1,041.23 and provide a "retropayment" of $1,499.28.  *Id.* ¶¶ 52–53.

Nessi alleges that, despite her requests, she has never received from Honeywell

any information regarding how her JSA benefits were calculated.  Nessi asserts that she is entitled to the benefits provided under the Plan as in effect when she terminated her employment with UOP in 1988 and that the Plan document in effect at that time utilized the UP-1984 mortality table.  According to Nessi, use of the UP-1984 table to convert her straight life annuity to a joint and survivor annuity resulted in an unreasonable calculation of her benefits because the table itself is outdated.  Based on conversations with Honeywell's counsel, Nessi alleges that Honeywell contends the Plan uses "tabular factors" to calculate the JSA.  *Id.* ¶¶ 68–69.  Nesi asserts that despite this contention, Honeywell has "never provided any explanation or documents explaining the J&S factors nor explaining what factors they purported to apply."  *Id.* ¶ 72.  Nevertheless, Nessi alleges that "whether Defendants are employing the Tabular Factors or the 7.5% interest rate and UP-1984 mortality table, the Plan's factors are not reasonable and are outdated" and therefore she receives "benefits that are significantly less than the actuarial equivalent of the [Straight] Life Annuity and significantly less than if [her] benefits had been calculated under reasonable factors."  *Id.* ¶ 76.

In July 2024, Nessi filed the present action.  She brings three class-wide claims in Counts 1 through 3 and two individual claims in Counts 4 and 5, all for violations of provisions of ERISA.

## Discussion

Honeywell has moved for dismissal under Rule 12(b)(6).  It also challenges Nessi's standing to pursue certain of her claims.  The Court will address each argument in turn.

4

## A.     Standing

Before turning to the merits of Nessi's claims, the Court must first address Honeywell's arguments challenging her standing.  Standing has three elements:  a plaintiff must establish that she has (1) "suffered a concrete and particularized injury that is either actual or imminent," (2) "that the injury is fairly traceable to the defendant," and (3) "that it is likely that a favorable decision will redress that injury."  *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007).  These requirements are frequently shorthanded to injury in fact, causation, and redressability.

The injury-in-fact element requires a plaintiff to show that the alleged harm is "'concrete,' meaning that it must be real and not abstract."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  The injury also must be "particularized; [it] must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance."  *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).  Causation and redressability are "often flip sides of the same coin."  *Id.* at 380 (citation and quotation marks omitted).  Causation requires a plaintiff to "establish that the plaintiff's injury likely was caused or likely will be caused by the defendant's conduct."  *Id.* at 382.  "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."  *Id.* at 381.

Nessi seeks to certify, in relevant part, a class including "[a]ll retired Plan participants who were married at the time of retirement and their beneficiaries who are receiving a 50% or 75% Joint and Survivor Annuity (or, *for beneficiaries whose spouse died before commencing benefits, a pre-retirement survivor annuity*)."  Am. Compl. ¶ 95 (emphasis added).  Honeywell challenges Nessi's standing to pursue a claim on behalf

of Plan participants who receive a pre-retirement survivor annuity. According to Honeywell, Nessi does not receive this type of annuity and therefore she is not affected in a personal and individual way if those annuities as paid by the Plan are less than the actuarial equivalent of a straight life annuity. Therefore, Honeywell contends, Nessi lacks standing to pursue a claim that the manner in which PSAs are calculated violates ERISA. In response, Nessi argues that Honeywell uses the same factors to calculate PSA benefits as JSA benefits and that she has standing to challenge "benefits that are computed in exactly the same way and are unlawful in exactly the same way." Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 12.

The Court concludes that Honeywell has the better argument. As Nessi alleges in her amended complaint (and per ERISA's requirements), the Plan's PSA is available to surviving spouses "in the event a vested participant dies before their annuity starting date." Am. Compl. ¶ 25 (citing 29 U.S.C. § 1055). It is undisputed—and here the Court risks stating the obvious—that Nessi did not die before her annuity starting date and therefore her spouse, Mr. Maguda, is not entitled to a PSA. Nessi has vested rights to receive her pension benefits under the Plan in the option she selects, limited in certain circumstances to require the consent of her spouse. In exercising this right, Nessi has selected a "50% J&S benefit, effective March 1, 2023." *Id.* ¶ 44. Because Nessi opted to receive her benefits during her lifetime, she (or rather, her husband) is foreclosed under the Plan from receiving a PSA. *See* Johnson Decl., Ex. 1 at 48 ("A Participant with a vested Accrued Benefit under the REP Formula, who dies before his Annuity Starting Date and who has a Surviving Spouse, shall have a Qualified Preretirement Survivor Annuity paid to his Surviving Spouse . . . ."). Thus any relief the Court grants

6

regarding the PSA would not redress Nessi's alleged injury involving her JSA payments. In addition, any alleged injury resulting from how Honeywell calculates Nessi's JSA based on her SLA would not be caused by how it calculates PSA benefits, even if the two benefit options are calculated using the same factors as Nessi contends. And, perhaps most obviously, Nessi does not suffer an injury in fact if Honeywell incorrectly calculates benefits that Nessi does not qualify for and does not receive.

Nessi appears to contend that, because she brings this case as a class action, the standing of other class members who would receive PSA benefits is imputed to her. Not so. "[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). One of the cases Nessi relies on, *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), states exactly this. *Id.* at 423 ("A potential class representative must demonstrate individual standing vis-as-vis [sic] the defendant; he cannot acquire such standing merely by virtue of bringing a class action."). Further, in *Fallick*, the district court had already determined that the plaintiff had standing; the Sixth Circuit affirmed this finding and addressed the issue of plaintiff's claims through the lens of Rule 23. *See id.* ("[O]nce the district court correctly determined that Fallick had standing to bring suit under ERISA . . . the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members.").

Based on the above, the Court finds that Nessi lacks standing to challenge

Honeywell's calculation of PSA benefits. The Court grants Honeywell's motion to dismiss to this extent and strikes from the amended complaint any reference to claims regarding the Plan's pre-retirement survivor annuity.

The Court next turns to Honeywell's Rule 12(b)(6) motion.

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), the plaintiff's complaint must contain factual allegations sufficient to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts as alleged lead the Court to a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put differently, the facts as set forth in the complaint must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted); *see also Twombly*, 550 U.S. at 570 (finding that the plaintiff need only allege enough facts to "nudge[] their claims across the line from conceivable to plausible"). The Court takes all well-pleaded facts as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024). In addition to the pleadings, a plaintiff opposing a Rule 12(b)(6) motion "may submit materials outside the pleadings to illustrate the facts [she] expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Although the additional material is not evidence, but a plaintiff may "allege without evidentiary support any facts [she] pleases that are consistent with the

8

complaint[] in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle [her] to judgment." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992).

Honeywell moves to dismiss only Counts 1–3 of Nessi's amended complaint and does not challenge Counts 4 and 5. Nessi alleges in Count 1 that Honeywell has violated section 205 of ERISA by failing to ensure that the Plan's calculation of the joint and survivor annuities results in the actuarial equivalent of a straight life annuity as required. Nessi next alleges in Count 2 that Honeywell has violated sections 203 and 204 of ERISA by failing to pay the full amount of accrued benefits, resulting in an illegal forfeiture of her vested benefits. Nessi alleges in Count 3 that Honeywell breached its fiduciary duty under ERISA by, amongst other things, failing to ensure that JSA benefits are the actuarial equivalent of SLA benefits, failing to ensure the Plan has a reasonable claims procedure, and failing to provide her with certain required documents and instruments. *See* Am. Compl. ¶ 122.

### 1. Count 1

Count 1 is a claim under sections 409(a) and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109(a) & 1132(a)(2), alleging a violation of ERISA's actuarial equivalence requirement, 29 U.S.C. § 1055. ERISA requires that JSA benefit options be "the actuarial equivalent of a straight life annuity for the life of a participant." 29 U.S.C. § 1055(d)(1)(B). Honeywell first contends that Count 1 should be dismissed because Nessi has failed to plausibly allege that her JSA benefits are not actuarially equivalent to her SLA benefits and thus violate ERISA.

ERISA does not define "actuarial equivalence," nor does it expressly require that

calculation of actuarial equivalence requires the use of reasonable assumptions, like mortality assumptions. But this Court has previously concluded that "it cannot possibly be the case that ERISA's actuarial equivalence requirement allows the use of unreasonable mortality assumptions" because, "[t]aken to the extreme, [this] argument suggests that [plan administrators] could have used any mortality table—presumably, even one from the sixteenth century—to calculate the plaintiffs' JSAs." *Urlaub v. CITGO Petroleum Corp.*, No. 21 C 4133, 2022 WL 523129, at \*6 (N.D. Ill. Feb. 22, 2022). Other courts have agreed with this Court's conclusion in *Urlaub*. *See, e.g.*, *Paieri v. W. Conf. of Teamsters Pension Tr.*, No.2:23-cv-00922-LK, 2024 WL 4554616, at \*9–10 (W.D. Wash. Oct. 23, 2024) ("The Court agrees with *Urlaub* that the plain meaning of 'actuarial equivalence' requires reasonable actuarial assumptions . . . ."); *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 750–54 (D. Minn. 2022) (agreeing with *Urlaub* and further finding that industry standards require using reasonable assumptions to determine actuarial equivalence). *But see Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161, 169–75 (D. Mass. 2022) (noting that the statutory language omits the term "reasonableness" and that the term "actuarial equivalence . . . is a term of art" that does not "necessarily require[] or impl[y] 'reasonable' actuarial assumptions").

Honeywell contends that Nessi has failed to plausibly allege that her JSA benefits are not actuarially equivalent to her SLA benefit for two reasons. First, Honeywell argues that Nessi's complaint is factually deficient. According to Honeywell, because it uses fixed conversion factors, or tabular factors, to calculate Nessi's JSA, the only issue "is whether the factor chosen by the Plan results in an actuarially equivalent JSA benefit." Defs.' Mem. in Supp. of Mot. to Dismiss at 9. Honeywell asserts that

Nessi relies only on conclusory statements that the Plan's fixed conversion factors "are not reasonable," Am. Compl. ¶ 74, and that she fails "to identify what a proper conversation factor would be" to ensure her JSA benefits are actuarially equivalent to her SLA benefits. Defs.' Mem. in Supp. of Mot. to Dismiss at 9. Second, Honeywell contends that Nessi has failed to put forth factual allegations plausibly showing that "she *personally* received less money under the approach applied to her than she would under her proposed approach." *Id.* Honeywell asserts that such facts are necessary to establish injury in fact and, by extension, standing.

The Court is not persuaded by either of Honeywell's arguments. First, Honeywell provides no legal support for its contention that Nessi was required to identify what proper conversation factor would result in an actuarially equivalent JSA. The single case that Honeywell cites on this point goes to the general premise that a complaint may not rely on conclusory allegations. Point taken. But Nessi's amended complaint contains far more information regarding Honeywell's payments under the Plan, and these factual allegations plausibly support her claim that her JSA is not the actuarial equivalent of her SLA. Nessi points to the numerous reductions to the monthly payments Honeywell told her she would get, all done allegedly without explanation. And Honeywell eventually increased her monthly payments after, as Nessi contends, informing her that it "incorrectly applied" the fixed conversion factors. Given that her current monthly payment is still less than the figure originally presented to her, it is plausible that Honeywell is using an unreasonable conversion factor. Further, as Honeywell itself acknowledges, the issue is whether use of the conversion factor results in an actuarially equivalent JSA benefit. The tabular conversion factors do not exist in a

vacuum; they are determined by reference to a mortality table. Given Honeywell's claimed refusal to divulge what mortality table it relies upon for the tabular factors, it is plausible that whatever mortality table is has used is outdated, resulting in an unreasonable mortality assumption that in turn means Nessi is not receiving an actuarially equivalent JSA benefit.

Second, despite Honeywell's contention, Nessi has asserted specific facts, noted above, that plausibly support a claim that she is personally receiving less than the actuarial equivalent of an SLA. Nessi is not required to plead a specific dollar amount; it is sufficient to allege that she received less than required under the statute and support this with facts that plausibly support this allegation.

The Court therefore finds that Nessi has plausibly stated a claim that Honeywell has violated ERISA by failing to pay her JSA benefits that are the actuarial equivalent of SLA benefits under the Plan. Accordingly, the Court denies Honeywell's motion to dismiss Count 1.

### 2.    Count 2

Count 2 is a claim that Honeywell violated sections 203(a) and 204(c)(3) of ERISA, 29 U.S.C. §§ 1053(a) & 1054(c)(3), ERISA's nonforfeiture provision and benefit accrual requirement, respectively. Honeywell contends that Count 2 must be dismissed because Nessi brings her claim under the wrong section of ERISA. As a starting point, the remedies available under ERISA are listed under section 502, 29 U.S.C. § 1132(a), in pertinent part as follows:

A civil action may be brought—

(1) by a participant or beneficiary—
    (A) for the relief provided for in subsection (c) of this section, or

12

> (B) to recover benefits due to him under the terms of his plan, to
> enforce his rights under the terms of the plan, or to clarify his rights
> to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for
> appropriate relief under section 1109 of this title; [and]
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
> which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief (i) to redress such violations
> or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a). According to Honeywell, the type of relief Nessi seeks via Count 2 is available only under ERISA section 502(a)(1)(B). Nessi, however, brings her claims under sections 502(a)(2) and 502(a)(3). *See* Am. Compl. ¶ 117. Honeywell argues that, by failing to seek relief under the appropriate section of ERISA, Nessi has failed to state a claim upon which the Court can grant relief.

Honeywell's contention that Nessi is proceeding under the wrong ERISA provision appears to be without merit. The Supreme Court has found that section 502(a)(1)(B) permits a plaintiff to sue "to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). But that is not the end of the story. The Supreme Court has also found that section 502(a)(3) serves as a "'catchall' provision[] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). According to the Court, "[t]he words of subsection (3)—'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title'—are broad enough to cover

13

individual relief for breach of a fiduciary duty." *Id.* at 510. The Supreme Court in *Varity Corp.* affirmed the Sixth Circuit's analysis of remedies available under ERISA section 502. The Sixth Circuit, in turn, found that section 502(a)(3) authorizes "payments of money that plaintiffs would have received" but for the defendants' breach of their fiduciary duty; it characterized this form of payment as "restitution" because it embodied "what plaintiffs would have gotten" and was necessary to "restore[] [plaintiffs] to their rightful position." *Howe v. Varity Corp.*, 36 F.3d 746, 756 (6th Cir. 1994); *accord Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 993 (7th Cir. 1993) ("An individual may seek equitable relief from a breach of fiduciary duty under section 1132(a)(3).").

In her amended complaint, Nessi seeks equitable relief under ERISA sections 502(a)(2) and (a)(3) in part "to pay such redetermined benefits retroactively to the date of retirement with interest and/or an actuarial increase and to immediately make Plaintiff and all Class members whole by restoring all benefits wrongfully not paid and/or withheld together with make-whole relief." Am. Compl. ¶ 117. In other words, Nessi seeks relief that would put her in the position she would be in had Honeywell not, as she contends, incorrectly calculated her benefits. This is a claim for restitution and not, as Honeywell asserts, an attempt to seek "*more* benefits than the plan allows." Defs.' Mem. in Supp. of Mot. to Dismiss at 13. As such, Count 2 is a claim for precisely what Nessi is owed under the Plan—it is a request for the Court to restore her to her rightful position. As the Supreme Court made clear in *Varity Corp.*, such relief is available to an individual plan participant under ERISA section 503(a)(3).

Having clarified that Nessi is asserting this claim under the appropriate section of ERISA, the Court will address whether she has stated a plausible claim for relief.

14

"Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ." 29 U.S.C. § 1053(a). The Seventh Circuit has held that "failure to pay any month's benefit worked a forfeiture of that amount." *Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009). Any missed payment must be "made up, either by payment (*with interest*) once the deferral ends, or by a suitable actuarial adjustment to the ongoing benefits." *Id.* (emphasis added). The court in *Contilli* found that either interest or an upward adjustment was necessary, "otherwise the value of the pension is lower than one that begins on the normal retirement date, and a reduction to the total value of all monthly benefits is a kind of forfeiture." *Id.*

The Court has laid out Nessi's allegations supporting her contention that Honeywell deviated downward from its initial representation of the monthly benefit she would receive. As previously explained, Honeywell allegedly resolved this underpayment by adjusting Nessi's monthly payments upward (though not to the amount initially communicated to her) and provided her with a retropayment to account for the previous months' underpayment of benefits. Nessi alleges that this retropayment did not include interest. She also claims that when she asked Honeywell for an explanation of the change and reduction to her benefits, it told her that the "Joint/Survivor factor was incorrectly applied." Am. Compl. ¶ 58.

The Court finds that Nessi's allegations of a failure to pay the correct amount of benefits owed, and additionally the failure to pay interest or make an upward adjustment to account for underpayment, state a plausible claim for forfeiture under ERISA. According to the complaint, Honeywell initially told Nessi she would receive one amount

but then reduced that amount several times without explanation.  Honeywell then, Nessi claims, acknowledged its underpayment by increasing her monthly payments and offering a retropayment to account for the previous months.  Allegations that Honeywell changed the amount of her monthly payments, only to then increase the payments and offer a retropayment, are sufficient to state a plausible claim that Honeywell violated ERISA's non-forfeiture provision by failing to pay the total amount of a given month's benefit.  Further, the Seventh Circuit in *Contilli* made clear that a retroactive payment alone is insufficient to account for previous underpayments; such retroactive payments must also include interest, "otherwise the value of the pension is lower than one that begins on the normal retirement date, and a reduction to the total value of all monthly benefits is a kind of forfeiture."  *Contilli*, 559 F.3d at 722.  At this early stage of the case, the Court must take as true Nessi's contention that this retropayment did not include interest, and Honeywell has pointed to nothing that would undermine this contention.

Though Honeywell contends that *Contilli* is distinguishable from this case, the Court disagrees.  *Contilli* addressed a scenario where a plan participant was deprived of the full amount of his pension benefits due to a delay in payments.  The court in *Contilli* expressly recognized that failure to pay interest on these delayed payments violated ERISA's statutory requirement that a joint and survivor annuity be the actuarial equivalent of a straight life annuity and thus resulted in an impermissible forfeiture.  And although Honeywell contends that Nessi is seeking to "reform the Plan so that she is paid greater benefits than the Plan currently prescribes," Defs.' Mem. in Supp. of Mot. to Dismiss at 11, this is an incorrect characterization of Nessi's claim.  As noted above, Nessi is seeking, in part, restitution "by restoring all benefits wrongfully not paid and/or

16

withheld together with make-whole relief."  Am. Compl. ¶ 117. She also seeks an injunction requiring Honeywell to "recalculate" the amount of pension benefits owed under the Plan, but the complaint makes clear that such relief is limited to only such recalculation as is necessary to "provide Ms. Nessi and Class members with actuarially equivalent benefits."  *Id.*  This is not, as Honeywell asserts, an attempt to seek more than she is due under the Plan.  Rather, it is a request to this Court to require the Plan to comply with ERISA's requirements.  Such equitable relief is clearly available under ERISA section 503(a)(2) and (a)(3), and the Court finds that Nessi has stated a plausible claim that Honeywell violated ERISA's non-forfeiture provision.

Accordingly, the Court denies Honeywell's motion to dismiss Count 2 of the amended complaint.

### 3. Count 3

Count 3 is a claim that Honeywell breached its fiduciary duty as set forth under sections 404(a)(1) and 405 of ERISA, 29 U.S.C. §§ 1104(a)(1) & 1105.  Honeywell contends that Court 3 must be dismissed for two independent reasons.  First, it argues that Nessi has failed to plausibly allege that it was acting as a fiduciary when applying the Plan's tabular factors to calculate her JSA benefits.  Second, Honeywell contends that certain aspects of Count 3 are duplicative of other counts and that those aspects of this claim should therefore be dismissed.

"In every case charging breach of ERISA fiduciary duty, the threshold question is whether that person was acting as a fiduciary in taking the action at issue."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (citation modified).  To state a claim for breach of fiduciary duty, a plaintiff must show: "(1) that the defendant is a plan fiduciary; (2) that

the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Bator v. Dist. Council 4*, 972 F.3d 924, 929 (7th Cir. 2020) (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)).  As relevant here, ERISA defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A).

Honeywell contends that Nessi has failed to plausibly allege it had any discretionary authority or control to select or amend the Plan's JSA conversion method or that it had discretion in calculating her benefits using the tabular factors.

The Court does not find this argument persuasive.  At this point—despite multiple requests and a statutory duty to do so—Nessi alleges that Honeywell has failed to turn over certain allegedly critical Plan documents.  Given this lack of information, it is unclear whether Honeywell has any discretionary authority or control over calculating pension benefits using the tabular factors, and Nessi would have no way of knowing to what extent Honeywell may have such discretion.  Courts may "excuse deficiencies [in a complaint] that result from the plaintiff's inability to obtain information within the defendant's exclusive control."  *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (applying this principle under Rule 9(b)); *see also Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010))).

Nessi has alleged that Honeywell utilized an outdated mortality table when calculating her pension benefits and reduced her monthly payments multiple times before eventually increasing the amount—but not to the amount initially represented to her.  Nessi claims to have made multiple requests for, among other documents, a copy of her pension file, a detailed calculation of her retirement benefits, complete copies of all Plan documents and their amendments since the time of her employment with UOP, a complete copy of the trust agreement governing the Plan, and copies of the mortality assumptions used to calculate her benefits.  *See* Am. Compl. ¶¶ 82–88.  Nessi further alleges that Honeywell has not provided this information.  These documents presumably would contain information showing the level of discretionary authority and control Honeywell has (if any) in calculating pension benefits and its ability to amend the Plan if it finds that the mortality assumptions it calls for fail to result in an actuarially equivalent JSA benefit.  Under the circumstances, the Court finds that at this point, Nessi has plausibly alleged, based on information and belief, that Honeywell breached its fiduciary duty by failing to act with the "care, skill, prudence, and diligence" required under ERISA.  29 U.S.C. § 1104(a)(1)(B).

Further, Nessi alleges in Count 3 that Honeywell breached its fiduciary duty of prudence and loyalty by failing to have an adequate claims procedure as required under ERISA.  Count 3 brings this claim on behalf of all potential Class members, and Nessi has included factual allegations that plausibly support the claim that Honeywell does not have the requisite claims procedure.  Therefore, Count 3 does plausibly plead a class-wide breach of fiduciary duty such that dismissal is unwarranted even if the Court's analysis above misses the mark.

19

The Court also declines to dismiss the aspects of Count 3 regarding Honeywell's failure to disclose Plan documents and failure to have a sufficient claims procedure as required by ERISA.  Honeywell is correct that courts have authority to dismiss as duplicative "[c]laims that involve the same operative facts and same injury, and that require proof of essentially the same elements." *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014).  This authority, however, is discretionary.  *See, e.g.*, *Sanchez v. Village of Wheeling*, 447 F. Supp. 3d 693, 707 (N.D. Ill. 2020) (distinguishing *Barrow* and declining to dismiss two allegedly duplicative claims).

Further, it is unclear at this time whether the challenged aspects of Count 3 are wholly duplicative of other claims.  In the amended complaint, Nessi alleges in Count 3 that Honeywell breached its fiduciary duty to act with "care, skill, prudence, and diligence" under ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), thus resulting in liability under ERISA section 405, 29 U.S.C. § 1105.  Section 405 lists specific circumstances in which a fiduciary is liable to a plan participant or beneficiary.  Count 4, by comparison, alleges that Honeywell breached ERISA section 104(b)(4), the specific provision requiring a plan administrator "upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary plan description" and other enumerated documents "under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  A violation of this section makes an administrator liable for "$100 a day from the date of such failure or refusal."  29 U.S.C. § 1132(c)(1).  Though these claims may well rely on the same proof, they allege different statutory harms and therefore are not duplicative.  For instance, proving that Honeywell breached a fiduciary duty under the circumstances listed under ERISA section 405 may require different

20

proof than that necessary to show Honeywell violated ERISA section 104(b)(4). The same can be said about Count 5, which alleges that Honeywell violated ERISA section 503, 29 U.S.C. § 1133, a different provision than those identified in the other claims.

Honeywell's contention that these counts require proof of essentially the same elements is thus lacking in merit. And even if the contrary is true, the Court would not, at this early phase, use its discretionary authority to carve out certain aspects of Count 3. For these reasons, the Court denies Honeywell's motion to dismiss Count 3.

### Conclusion

For the reasons stated above, the Court dismisses for lack of standing plaintiff's claims to the extent they are brought on behalf of Plan participants and beneficiaries receiving a pre-retirement survivor annuity but otherwise denies defendants' motion to dismiss [dkt. no. 53]. Defendants are directed to answer the remaining claims by July 23, 2025. The parties are directed to confer regarding a comprehensive discovery and pretrial schedule and are to file a joint status report with a proposal by July 11, 2025. The case is set for telephonic status hearing on July 18, 2025 at 9:15 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 2, 2025

21